UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY B. SCRINE,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

No. 14-14841

District Judge Robert H. Cleland

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

      Plaintiff Nancy B. Scrine ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant ("Defendant") Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. On June 24, 2015, Plaintiff, proceeding *pro se,* filed a response to the undersigned's order to show cause why the case should not be dismissed, stating the reasons that she believes that she is entitled to benefits [Dock. #16], which the Court construes as a motion for summary judgment. Defendant filed a motion for summary judgment on August 17, 2015 [Dock. #17]. These motion have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's motion [Docket #16] be GRANTED to the extent that the case

be remanded for further fact-finding and that Defendant's motion [Docket#17] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI on January 18, 2012, alleging disability as of November 1, 2006[1] (Tr. 116).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 17, 2013 in Toledo, Ohio (Tr. 31).  Administrative Law Judge ("ALJ") Earl B. Ashford presided.  Plaintiff, represented by attorney Michael J. Plowman, testified (Tr. 35-48), as did Vocational Expert ("VE") Joseph Thompson (Tr. 48-53).  On July 17, 2013, ALJ Ashford found that Plaintiff was capable of performing her past relevant work from the amended alleged onset date through the December 31, 2011 expiration of DIB benefits (Tr. 24-25).

On October 29, 2014, the Appeals Council declined Plaintiff's request for review (Tr. 1-3).  Plaintiff filed suit in this Court on December 22, 2014.

## II.  BACKGROUND FACTS

Plaintiff, born December 14, 1952, was 59 at the time of the expiration of DIB benefits (Tr. 25, 116).   She completed high school and worked previously as a help desk systems analyst, IT analyst, office automation analyst, and PC support specialist (Tr. 134-135).  She alleges disability due to an immunological disorder, asthma, allergies, thyroid

---

[1] The transcript shows that Plaintiff also applied for DIB and later amended the alleged onset of disability to November 29, 2010 (Tr. 129).  She acknowledged that in order to receive DIB (earning-based benefits), she was required to establish disability on or before her date last insured of December 31, 2010 (Tr. 129).

problems, depression, bladder problems, eczema, sinusitis, sleep disruption, and bronchiectasis[2] (Tr. 133).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived with her husband (Tr. 35). She stood 5' 6" and weighed 160 pounds (Tr. 36). As a result of steroid use, she had recently gained 10 pounds (Tr. 36). She held a valid driver's license and did not experience problems driving (Tr. 36). She last worked as an IT project manager, requiring her to analyze the "economic feasibility" of the proposed projects (Tr. 37). The job did not require her to lift more than two pounds (Tr. 37). She also worked as an IT-related "help desk" job analyst, requiring her to provide assistance to individuals with computer or printer problems (Tr. 38). The help desk job required her to lift up to 30 pounds (Tr. 38). Her most recent job ended in 2005 due to a reduction in job force (Tr. 44). She would have remained in the job if she had not been laid off, but was unable to work as of 2007 due to asthma (Tr. 45). Prior to being laid off, she carried a nebulizer while working (Tr. 46).

Plaintiff was unable to resume her former work because the computer skills required had changed since 2005 (Tr. 39). She would currently require a college degree and extensive

---

[2] Bronchiectasis is defined as "a condition in which damage to the airways causes [the lungs] to widen and become flabby and scarred." The condition is generally precipitated by an infection, causing "the airways lose their ability to move air in and out." https://www.nhlbi.nih.gov/health/health-topics/topics/brn (last visited January 19, 2016).

training to return to her former jobs (Tr. 40). In addition, she was unable to meet either position's requirement of walking up to a mile at a time (Tr. 39). At present, she was unable to walk more than a half block or stand for more than 20 minutes (Tr. 40). She was unable to sit for more than 30 minutes (Tr. 43). She could "barely lift" a bag of groceries (Tr. 40). She was able to bend, stoop, and squat for short periods (Tr. 41). A ganglion cyst on her right wrist caused pain shooting up into her elbow (Tr. 41). As a result of the cyst, her primary care physician had limited her to lifting a maximum of 10 pounds with the right hand (Tr. 42). She was unable to lift more than five pounds with the left hand (Tr. 42).

Plaintiff typically slept 10 hours a night and took a 90-minute nap each day (Tr. 43). She did not require help with personal care (Tr. 43). On a typical day, she would dress, do laundry, make her bed, cook, read, and garden (Tr. 43). Her ability to garden was limited by asthma and allergies, requiring her to use a nebulizer or inhaler (Tr. 44).

In response to questioning by her attorney, Plaintiff testified that she became short of breath "10 times a day," noting that she required up to 10 minutes to catch her breath (Tr. 46). She reported becoming winded by walking, using stairs, bending, reaching, and other activities of daily living (Tr. 46-47). She testified that she had been diagnosed with asthma at the age of 30 (Tr. 47). She indicated that the asthma symptoms, including "gasp[ing] for air" were triggered by cold weather, germs, stress, and grass and trees (Tr. 47-8). She also noted that the asthma was exacerbated by repeated bouts of pneumonia (Tr. 47).

**B. Medical Records**[3]

March, 2010, Melissa A. Sokol Keith, M.D. noted Plaintiff's complaint of right arm and hand numbness (Tr. 335). She was diagnosed with ulnar nerve compression (Tr. 335). In November, 2010, Deborah Oberdoerster, M.D. saw Plaintiff on an emergency basis for shortness of breath (Tr. 242). Dr. Oberdoerster prescribed Albuterol (Tr. 243). Dr. Oberdoerster also observed that Plaintiff's eczema "does very well if [Plaintiff and her husband] travel twice each year to the Caribbean and lay in the sun" (Tr. 242). Plaintiff reported significant improvement in respiratory symptoms after taking Prednisone (Tr. 240). The same week, Dr. Keith opined that Plaintiff had "waited far too long to seek treatment" and was "at risk for asthma death" (Tr. 351).

In January, 2011, Plaintiff again sought treatment for chronic shortness of breath (Tr. 238). Plaintiff noted that her father died "at age 50 of pneumonia" and that her mother had had tuberculosis (Tr. 238). Plaintiff was diagnosed with "severe airway obstruction," partially reversible with shortness of breath upon activity (Tr. 238, 358). Imaging studies of the chest were unremarkable (Tr. 214). In March, 2011, Plaintiff reported that she could perform with regular activities without problems but experienced sleep disturbances and was unable to perform "increased aerobics" (Tr. 234, 375). A CT was negative for destructive obstructive lung disease (Tr. 371). In May, 2011, Dr. Oberdoerster noted that Plaintiff's

---

[3] Records significantly predating the alleged onset date and current records unrelated to the benefits claim have been reviewed in full but are omitted from the current discussion.

moderate to severe asthma was poorly controlled (Tr. 212, 377). Plaintiff reported shortness of breath upon walking (Tr. 229, 384). A December, 2011 Pulmonary Function Test ordered by Dr. Oberdoerster showed moderately severe airway obstruction (Tr. 212, 417, 423, 454). The same month, Dr. Keith noted that "respiratory effort" was normal (Tr. 411). Dr. Oberdoerster again noted that the asthma was poorly controlled (Tr. 224, 226). A January, 2012 CT showed "no evidence of bronchiectasis or other inflammatory process (Tr. 206). The same month, Kamal K. Mubarak examined Plaintiff, noting her report of variable immunoglobulin deficiency causing fatigue (Tr. 198, 418, 506). Dr. Oberdoerster noted diagnoses of Chronic Obstructive Pulmonary Disorder ("COPD"), thyroid disease, and GERD (Tr. 222-223). February, 2012 test results showed a higher risk for thyroid disease (Tr. 431, 441). The following month, Dr. Mubarak noted that Plaintiff was positive for coughing and wheezing (Tr. 491, 511). Dr. Oberdoerster's April, 2012 treating records note Plaintiff's report that she was sleeping "better," but still experienced significant fatigue (Tr. 448).

The following month, Dr. Oberdoerster completed an assessment of Plaintiff's work-related activities, noting that Plaintiff experienced shortness of breath (Tr. 465). She declined to impose walking, standing, sitting, or lifting restrictions, but opined that Plaintiff would require occasional unscheduled work breaks, as needed, for shortness of breath (Tr. 466-467). In August, 2012, Dr. Mubarak noted that immunodeificiency disease was under control with replacement therapy (Tr. 482, 513-514). Pulmonary testing showed "moderately

severe airway obstruction" with possible emphysema (Tr. 484, 518, 536). Dr. Oberdoerster observed that the bronchiectasis was "much improved" (Tr. 526). In October, 2012, Dr. Oberdoerster noted that "bronchiectasis/asthma/fixed airways disease" was "still symptomatic throughout the day but only with activity" (Tr. 521). In January, 2013, Dr. Keith noted the symptoms of fatigue and insomnia (Tr. 477). The same month, Dr. Oberdoerster noted that Plaintiff experienced respiratory symptoms with activity (Tr. 523). April, 2013 thyroid testing showed a "higher risk for thyroid disease" (Tr. 473).

**C. Vocational Testimony**

Citing the Dictionary of Occupational Titles ("DOT"), VE Joseph Thompson classified Plaintiff's former work as a help desk analyst, IT analyst, support specialist, and project manager as skilled and exertionally sedentary[4] (Tr. 49, 191). He testified that the job of IT analyst, as described by Plaintiff, was performed at the light exertional level (Tr. 49). The ALJ then posed a question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [H]as a residual functional capacity for light work with postural limitations of

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, and crawling, an environmental limitation to avoid moderate exposure to extreme cold, extreme heat, humidity, irritants such as fumes, odors, dust, and gases, and hazards such as moving machinery and unprotected heights (Tr. 50).

The VE responded that given the hypothetical limitations, the above-limited individual could perform all of Plaintiff's past relevant work (Tr. 50). The VE testified further that the need to miss more than four days of work each month would preclude both the past relevant work and any other competitive employment (Tr. 50-51). The VE added that the need to be "off task" for more than 20 percent of the workday (other than scheduled breaks) would preclude all work (Tr. 51-52).

In response to questioning by Plaintiff's attorney, the VE testified that computer "technology . . . changed significantly" since 2005 (Tr. 52). He testified as follows:

"It's difficult to say whether any kind of short demonstration would allow a person to upgrade their skills, but certainly the technology has changed to the point of where, over a seven-year period, I believe that that would make it difficult to return in at least the higher-level positions. Possibly the help desk or support specialist position would provide a little easier transition" (Tr. 52).

The VE testified further that he did not know whether "complete retraining would be needed, but certainly, upgrading of skills would be applicable," depending on "the role and duties." He noted that "[t]he more elementary in dealing with help desk and acting as a support specialist the job is, the . . . the less requirements there would be" (Tr. 53).

**D. The ALJ's Decision**

Citing the medical records, the ALJ found that from November 29, 2010 through the date last insured of December 31, 2011, Plaintiff experienced the severe impairments of "common variable immunodeficiency disorder/immunoglobulin deficiency; asthma; bronchiectasis without acute exacerbation; chronic obstructive pulmonary disease/moderately severe obstructive airway disease, reversible; mild diffusion defect/emphysema; and fatigue" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15, 18-20). The ALJ found that the conditions of hypothyroidism, bladder urgency, gastroesophageal reflux disease, a ganglion cyst, arthritis, depression, and anxiety were non-severe conditions (Tr. 16-17).

The ALJ determined that Plaintiff had the Residual Functional Capacity for exertionally light work with the following additional limitations:

> Postural limitations of no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Occasional stooping, kneeling, crouching and crawling. Environmental limitations to avoid moderate exposure to extreme cold, extreme heat, humidity, irritants such as fumes, odors, dust, gases, and hazards such as moving machinery and unprotected heights (Tr. 20).

Citing the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a help desk analyst, support specialist, information technology analyst, and project manager as the work was "actually and generally performed" (Tr. 25).

The ALJ discounted Plaintiff's allegations of disability, citing December, 2008 medical records showing that asthma was under "good control" (Tr. 21). He noted that an

August, 2007 x-ray showed "only mild" COPD (Tr. 21). The ALJ observed that Plaintiff did not show significant respiratory symptoms again until November, 2010 at which time she was treated for a respiratory infection with asthma exacerbation (Tr. 22). He noted that as of March, 2011, pulmonary function tests were similar to 2007 levels (Tr. 22). The ALJ found that while pulmonary function tests in August, 2011 showed "moderately severe" obstructive airway disease, Plaintiff was able to begin the use of a treadmill (Tr. 22). He noted that as of October, 2012, the pulmonary symptoms had improved and that she was "symptomatic only with activity" (Tr. 22).

The ALJ observed that Plaintiff's allegations of disability were also undermined by ability to garden and travel to the Caribbean twice a year (Tr. 24). He noted that "as recently as December of 2008, she was selling party lights and candles, despite her doctor's concern that their fragrance could irri[tate] her asthma" (Tr. 24). The ALJ rejected the argument that Plaintiff would require "retraining due to changing technology in [her] field," stating that the VE "testified that this would more likely entail only some updating of skills, rather than extensive retraining, given the nature of [her] past relevant work" (Tr. 25).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff, proceeding *pro se*, disputes the finding that she can perform any of her past relevant work. *Docket #16.* She argues that she would require "extensive training" to resume her former IT work because the job requirements have changed dramatically since she stopped working in 2005. *Id.* at 1. She contends that even assuming that she did not require retraining, her respiratory problems preclude even sedentary work. *Id.*

The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton,* 391 F.3d 710, 712 (6th Cir.2004)(*citing Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Herron v. Harrison,* 203 F.3d 410, 414 (6th Cir.2000) (*pro se* pleadings are held to "an especially liberal standard"). Further, in Social Security cases, the failure to submit a brief or a full blown legal argument "[is] not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte,* that grounds exist for reversal. *See Wright v. Commissioner of Social Sec.* 2010 WL 5420990, *2 -3 (E.D.Mich.2010)(Friedman, J.).

Plaintiff's argument that she is unable to perform her past relevant work pertains to

the ALJ's findings at Step Four of the sequential analysis. At Step Four, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2. The Step Four determination can be supported by the finding that claimant can perform her past relevant work as "actually performed," or, "as generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). At Step Four of the sequential analysis, the claimant "bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

While an ALJ is not required to elicit vocational testimony in making a Step Four finding, the use a VE is not prohibited. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). While "'the ultimate responsibility for making the necessary findings at [Step Four] rests with our adjudicators ... it is appropriate for our adjudicators to consider evidence from a VE . . .'" *Merkel v. CSS*, 2008 WL 2951276, *3–4 (E.D.Mich. July 29, 2008) (Lawson, J.)(citing

20 C.F.R. § 404.1560(b)). "The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor h[is] finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Commissioner,* 345 Fed.Appx. 163, 167, 2009 WL 2877930, at *4 (6th Cir.Sept.9, 2009)(*citing Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir.2003)). "The function of the VE is to advise the ALJ of jobs found among various categories of employment which the claimant can perform with h[is] limitations." The hypothetical question and corresponding VE testimony, if adopted by the ALJ, must accurately reflect the claimant's degree of limitation. At Step Four, "the propriety of the hypothetical question . . . is a proper concern for the Court, since it may furnish relevant information that the ALJ may consider in determining whether the plaintiff could do her past work." *Merkel,* at *4.

In this case, the ALJ relied on the VE's testimony that the limitations posed in the hypothetical question would allow Plaintiff to resume her former IT-related positions (Tr. 20, 50). The RFC found in the ALJ's determination mirrors the limitations found in the hypothetical question forming the basis of the VE's job testimony (Tr. 20). Nonetheless, the ALJ's Step Four finding that Plaintiff could perform her past relevant work is problematic for multiple reasons. Citing the VE's testimony, the ALJ's found that Plaintiff would require only "some updating of skills rather than extensive retraining" to resume her IT-related former work (Tr. 25). However, the statement is a mischaracterization of the VE's actual testimony. In fact, the VE refrained from offering any testimony to that effect (Tr. 52-53).

In response to questioning by Plaintiff's attorney, the VE acknowledged that "the technology ha[d] changed significantly" since Plaintiff had left work in 2005 (Tr. 52). He stated that it was "difficult to say whether any kind of short demonstration would allow a person to upgrade their skills" and that it would be "difficult" to return to the "higher-level positions" (Tr. 52). He testified that "possibly," a return to the "help desk or support special position would provide a little easier transition" but later qualified that statement by noting that the degree of upgrading required would depend on job's "the role and the duties" (Tr. 52). None of the VE's testimony can be interpreted to state that Plaintiff would not need significant retraining before returning to any of the former positions. *See Wolf v. Colvin,* 2013 WL 3777200, *8-9 (N.D.Ind. July 18, 2013)(claimant's "outdated" skills precluded return to past relevant work as it was at present "normally performed in the economy"). The ALJ's conclusion that Plaintiff would merely require "some updating of skills" (as opposed to "extensive retraining") to resume her past work is unsupported by the record and flatly contradicted by both the VE's findings and Plaintiff's testimony that her former positions now required a "college degree" (Tr. 25, 40, 50). The ALJ's finding that Plaintiff could perform her past relevant work as generally performed is not supported by substantial evidence.

The ALJ's finding that Plaintiff could alternatively resume the former work as "actually performed" at the sedentary level is also problematic (Tr. 25). The record as a whole stands at odds with the finding that Plaintiff was capable of even sedentary work. She

received emergency treatment for shortness of breath in November, 2010 at which time she was told that she was "at risk for asthma death" (Tr. 351). While her condition improved somewhat as of January, 2011, the ALJ's implication that she had recovered to the extent that she could perform substantial gainful activity cannot be inferred from the records (Tr. 22). Treating notes state that she experienced shortness of breath upon activity and was diagnosed with "severe airway obstruction" (Tr. 238). May, 2011 records showing that Plaintiff experienced shortness of breath upon walking due to "poorly controlled" asthma (Tr. 229) stand at odds with the ALJ's finding that Plaintiff could perform her past relevant work requiring her to walk for up to two hours a day. December, 2011 tests show that Plaintiff continued to experience moderately severe airway obstruction (Tr. 212). January and February, 2012 treating records show that Plaintiff experienced significant fatigue due to the condition of variable immunoglobulin deficiency and "coughing and wheezing" (Tr. 198). Dr. Oberdoerster's May, 2012 opinion that Plaintiff would require occasional unscheduled breaks during her work shift for shortness of breath is consistent with the treating records and objective testing (Tr. 466-467). While the ALJ did not include the need to take unscheduled work breaks in the RFC, the VE testified that the need to take more than two breaks over the course of an eight-hour shift would be work preclusive (Tr. 52).

The ALJ's rationale for the conclusion that Plaintiff was nonetheless capable of her past relevant work relies on a narrow reading of the transcript, relying on fragments rather than the overall import of the treating records and other evidence. For example, the ALJ

noted that Plaintiff was able to sell "party lights and candles" as of December, 2008 (Tr. 24). However, Plaintiff's December, 2008 activities are not relevant to her condition as of the November, 2010 alleged onset of disability. Further, the ALJ acknowledged that the "at-home" sales did not amount to substantial gainful activity and it is uncertain whether the sales took more than a few hours each month. Plaintiff's ability to sell candles in 2008 on a part-time basis has little bearing on whether she was capable of working an eight-hour shift without requiring unscheduled breaks beginning in November, 2010.

Further, while the ALJ noted that Plaintiff was able to garden and perform light housekeeping chores, Plaintiff's testimony that she required breaks to catch her breath is consistent with Dr. Oberdoerster's opinion. The fact that Plaintiff was able to travel during the winter for therapeutic eczema treatment does not contradict her claims that she required frequent activity breaks due to shortness of breath and fatigue. Notably, Plaintiff's semi-yearly trips to "lie in the sun" to address symptoms of the skin condition was endorsed by long-term treating source Dr. Oberdoerster (Tr. 242, 465), who also opined that Plaintiff would require unscheduled work breaks due to breathing problems (Tr. 465).

Moreover, it is unclear why the ALJ cited the treating records stating that Plaintiff was "symptomatic only with activity" in support of the non-disability requirement (Tr. 22) when these findings would appear to support Plaintiff's position. The ability to walk two hours in an eight-hour workday as required for sedentary work, constitutes "activity." Plaintiff's testimony that she became winded after walking half a block, consistent with the

pulmonary testing showing moderately severe airway obstruction, supports the finding that she would be unable to walk for up to two hours a day (Tr. 212, 222, 484). The ALJ's conclusion that Plaintiff was actually capable of exertionally light work is of additional concern (Tr. 20). While the ALJ was required to show only that Plaintiff could return to her past relevant work (three of the four positions performed at the sedentary level) to establish non-disability at Step Four, his finding that Plaintiff could actually perform exertionally *light* work (requiring up to six hours of walking in an eight-hour period) is particularly questionable, given that the pulmonary tests, the treating records, and Dr. Oberdoerster's May, 2012 opinion support the need for unscheduled breaks precluding even sedentary work.

For these reasons, a remand for clarification and further fact-finding regarding the Step Four determination is required. However, the evidence in favor of disability, while strong, does not establish an "overwhelming" case for disability. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). For instance, determination of whether Plaintiff has transferrable skills from her former positions to support the Step Four finding was not addressed in the original findings. As such, the errors discussed herein do not automatically entitle the Plaintiff to an award of benefits. Rather, a remand for further vocational testimony regarding whether Plaintiff could perform her past relevant work (as generally or actually performed) or alternatively, the determination of transferrable skills is appropriate. Clarification of the Step Four findings is particularly critical, given Plaintiff's

advanced age. The Commissioner "faces a heavier burden when denying disability benefits to older claimants." *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 1111 (6th Cir. 1994). "People of advanced age (55 and over) are considered at an age which significantly affects their ability to do substantial gainful activity; if they are severely impaired and cannot do medium work, they must have skills that can be transferred to less demanding jobs which exist in significant numbers in the national economy" to avoid a finding of disability. *Id.*; 20 C.F.R. § 404.1563(d). Thus, a finding that Plaintiff, 59 at the date last insured, is unable to perform any of her past relevant work, does not possess transferrable skills, and is restricted to exertionally light or sedentary work would direct a finding of disability.

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff's motion [Docket #16] be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's motion [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 26, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 26, 2016, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager